**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                                  No.  CR-04-0159 MV

MATTHEW PHILPOTT,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant's Motion to Suppress **[Doc. No. 32]**, filed June 7, 2004. The Court, having considered the motion, briefs, relevant law and being otherwise fully informed, finds that the motion is not well taken and will be **DENIED**.

## BACKGROUND

In his affidavit in support of the application for a search warrant of Defendant's residence, Agent Task Force Officer ("TFO") Fuentes alleged that, on November 14, 2003, Officer Richard Delfin of the Corrales Police Department stopped Phil Duran for a traffic violation and recovered a plastic bag containing a red substance later identified as red phosphorous. Red phosphorous is one of the substances used to produce methamphetamine. Mr. Duran stated that he had intended to sell the red phosphorous to Defendant and Curtis Woosley. Mr. Duran also stated that he had cooked methamphetamine at Defendant's residence on multiple occasions.

Based on this information, TFO Fuentes alleged that TFO Fuentes, TFO Joey Rodriguez, and other officers from the Corrales Police Department began to conduct routine checks of Defendant's residence located at 175 Academy Road, Corrales, New Mexico.

Defendant disputes this allegation, arguing that "[t]he investigation . . . by TFO Rodriguez commenced long before November 14, 2003[,] and was motivated by a personal vendetta of TFO Rodriguez against [Defendant] because of [Defendant's] relationship with a personal friend of TFO Rodriguez." Defendant argues that this information constitutes a material omission and that the omission provides the basis for other misrepresentations in the affidavit.

TFO Fuentes alleged that, during December 2003, law enforcement officers noticed a small cargo trailer parked on the street in front of Defendant's residence. The trailer contained several trash bags and miscellaneous yard trash. Officers noticed that the trailer did not possess a license plate. Officers also noticed that the trash in the trailer was not picked up through normal sanitation runs and that it instead was dumped through the use of the trailer. TFO Fuentes indicated that, based on his training and experience, individuals involved in methamphetamine manufacture commonly utilize means other than normally-scheduled sanitation pickups to dispose of trash in an effort to avoid law enforcement trash runs.

TFO Fuentes alleged that, on December 30, 2003, at approximately 10:12 a.m., Officer Delfin noticed that the cargo trailer located in front of Defendant's residence was missing. Officer Delfin saw the trailer backed up to a dumpster located at 335 Academy View Lane, which is an elementary school, and noticed an individual throwing trash from the trailer into the dumpster. Officer Delfin stopped the individual for operating a trailer on a roadway without a valid license plate and for dumping trash into a private dumpster. Officer Delfin identified the driver of the vehicle as Defendant. Thereafter, Officer Delfin contacted TFO Rodriguez.

TFO Fuentes alleged that TFO Rodriguez arrived on scene and observed an empty twenty-four-count blister pack and eight matchbooks missing their strike plates in the dumpster. TFO

Rodriguez also observed chemical stains on Defendant's hands.  TFO Rodriguez asked Defendant if he was cooking methamphetamine and if Defendant would consent to a search of his residence. Defendant stated, "No."

Thereafter, according to the affidavit, TFO Rodriguez made contact with Betty Osborne, the principal of the elementary school.  Ms. Osborne informed TFO Rodriguez that the school trash had been dumped the previous day and that the trash lying on top in the dumpster did not belong to the school.  Ms. Osborne gave TFO Rodriguez permission to search the dumpster.  TFO Rodriguez and TFO Chris French began to remove the trash bags from the dumpster.

TFO Fuentes alleged that the officers recovered a tan suitcase and three trash bags from the dumpster.  The tan suitcase contained a Popular Mechanics magazine addressed to Defendant. Written on the magazine were the words "starting fluid" and "red devil lye."

According to TFO Fuentes, the first trash bag contained one empty gallon jug of acetone, one two-ounce bottle of Heat starter fluid, one sixteen-ounce can of Coleman Fuel, four empty blister packs of pseudoephedrine, thirty match books missing their striker plates, one target receipt showing the purchase of one twenty-four-count pseudoephedrine, and one Met Life booklet addressed to Defendant.

Fuentes alleged that the second trash bag contained three sixteen-ounce bottles of hydrogen peroxide, one eight-ounce bottle of red devil lye, one brown box containing pH papers, approximately thirty match books missing their strike plates, seventeen one-ounce bottles of tincture of iodine, four twenty-four-count boxes of euate pseudoephedrine tablets, one coffee filter containing a blue substance, and one Popular Mechanics magazine addressed to Defendant.

Fuentes maintained that the third trash bag contained two eighteen-ounce bottles of red devil lye, two sixteen-ounce bottles of hydrogen peroxide, one twenty-ounce can of table salt, one one-ounce can of Heat starter fluid, one ten-ounce can of starter fluid with holes punched in the bottom of the can, two twenty-four-count boxes of affrid pseudoephdrine, eight match books missing their strike plates, and one pay stub issued to Defendant. TFO Fuentes alleged that the chemicals and other items found in the dumpster are necessary to produce methamphetamine.

Defendant argues in his Motion to Suppress that TFO Rodriguez misrepresented to TFO Fuentes, the affiant, what was found in the dumpster that day. Specifically, Defendant claims that TFO Rodriguez "misrepresented what was found in the dumpster because he knew that any materials found in the dumpster had not been placed there by [Defendant]." The affidavit, however, does not allege that TFO Rodriguez indicated that the materials were placed in the dumpster by Defendant. Instead, it alleges that Officer Delfin saw an individual later identified as Defendant throwing trash from the trailer into the dumpster.

According to TFO Fuentes, after finding these items, TFO Rodriguez advised Defendant of his constitutional rights and asked Defendant if he would answer some questions. Defendant allegedly stated, "Yes." TFO Fuentes also indicated in his affidavit that Defendant admitted to TFO Rodriguez that he had "cooked" methamphetamine approximately 50 times at his residence and that he had cooked it the previous night for a subject by the name of Michael Martin.

Defendant disputes these statements in his Motion to Suppress. Specifically, Defendant claims that "TFO Joey Rodriguez never informed [him] of his constitutional right to remain silent and [that Defendant] refused to answer any questions posed by TFO Rodriguez."

On December 30, 2003, TFO Fuentes prepared a sworn affidavit and submitted it to Magistrate Judge Torgerson in order to obtain a warrant to search Defendant's residence. The affidavit indicates that the affiant has reason to believe that Defendant's house conceals: (i) controlled substances; (ii) precursor chemicals, acids, solvents, and reagents; (iii) United States currencies; and (iv) drug transaction records. The affidavit also provides a description of the events set forth above as facts tending to establish grounds for the issuance of the warrant. In addition, the affidavit describes TFO Fuentes's credentials, experience, and training in law enforcement generally and in drug detection in particular. The affidavit concludes that the request for the warrant is based on TFO Fuentes's training and experience and the events described above. With respect to these events, TFO Fuentes explains that he either personally was aware of the information or that other law enforcement officers relayed the information to him.

United States Magistrate Judge Torgerson signed the search warrant. Pursuant to the warrant, a search of Defendant's residence was conducted and evidence was seized. Defendant subsequently was indicted on three counts: (i) conspiracy to manufacture 50 grams or less of methamphetamine; (ii) maintaining a place within 1,000 feet of an elementary school for the purpose of manufacturing, distributing, and using a controlled substance; and (iii) endangering a human juvenile life while illegally manufacturing a controlled substance.

On June 7, 2004, Defendant filed the instant Motion to Suppress requesting that the Court suppress all evidence seized pursuant to the search warrant. On July 5, 2004, the government filed its Response to Defendant Philpott's Motion to Suppress Evidence Filed on June 7, 2004. Thereafter, on August 31, 2004, the government filed a Motion to Strike Philpott's Motion to Suppress or in the Alternative United States' Motion to Compel Response. In an Order entered

September 1, 2004, the Court granted the government's motion, directing Defendant to submit a pleading consistent with the Supreme Court's decision in *Franks v. Delaware*, 438 U.S. 154 (1978) (discussed below).

In accordance with the Court's Order, on September 14, 2004, Defendant filed a Supplemental Motion in Support of Mr. Philpott's Motion to Suppress, attaching as an exhibit an Affidavit of Patricia Moore. The government filed a Second Sealed Motion to Strike Philpott's Motion to Suppress on September 15, 2004. On September 23, 2004, Defendant filed a Response to United States' Second Sealed Motion to Strike Philpott's Motion to Suppress and a Response to United States' Second Sealed Motion to Strike Philpott's Motion to Suppress Based on Ms. Moore's Affidavit. The government's Reply to Defendant Philpott's Response to the United States' Motion to Dismiss Philpott's Motion to Suppress followed on September 29, 2004.

## DISCUSSION

Defendant argues that the Court should suppress all evidence seized pursuant to the search warrant. According to Defendant, under the Supreme Court case *Franks v. Delaware*, 438 U.S. 154 (1978), he is entitled to an evidentiary hearing to determine whether the facts included in the warrant affidavit are accurate. In *Franks*, the Supreme Court held that "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Id.* at 155-56 (1978). The Tenth Circuit extended the holding of *Franks* to material omissions. *See United States v. Kennedy*, 131 F.3d 1371, 1376 (10th Cir.), *cert. denied*, 525 U.S. 863 (1998); *Stewart v. Donges*, 915 F.2d 572, 582 (10th Cir. 1990). If a

defendant satisfies this two-part test, a court must hold an evidentiary hearing. *See, e.g.*, *United States v. Kiister*, No. 99-3042, 2000 U.S. App. LEXIS 3108 (10th Cir. Feb. 29, 2000) (evidentiary hearing required only when defendant makes substantial preliminary showing that affiant knowingly or recklessly either included affirmatively false statements or omitted material facts, and affidavit, with its necessary corrections, would not support probable cause) (citations omitted), *cert. denied*, 530 U.S. 1282 (2000).

In this case, Defendant argues that the affidavit in support of the search warrant contains false statements or material omissions made knowingly, intentionally, or with reckless disregard for the truth. Defendant further argues that if these statements were excluded and the omissions included, Judge Torgerson would not have made a finding of probable cause. In response, the government argues (i) that Defendant has not satisfied his burden under the first prong of the *Franks* test by demonstrating that law enforcement either knowingly or recklessly made false statements or intentionally omitted material information; (ii) even if such statements or omissions were made, Defendant cannot satisfy the second part of his *Franks* burden by demonstrating that once the material subject to the charge of falsity is excluded and the omitted material information included, there remains insufficient content in the warrant affidavit to support a finding of probable cause; and (iii) that the good faith exception applies even if the Court finds that the warrant is not valid on its face. As set forth herein, the Court finds that Defendant has not met the second part of the *Franks* test and, accordingly, Defendant is not entitled to a hearing.

### A.     First Part of *Franks* Test: Has Defendant Made a Substantial Preliminary Showing of False Statements or Material Omissions?

To satisfy the first part of his burden under *Franks*, Defendant must make a "substantial preliminary showing" that TFO Fuentes made a false statement knowingly, intentionally, or with reckless disregard for the truth, or that TFO Fuentes knowingly, intentionally, or recklessly made a material omission. *See Franks*, 438 U.S. at 155-56; *Kennedy*, 131 F.3d at 1376. A false statement or material omission need not be made by the affiant himself or herself. A deliberate or reckless false statement or omission incorporated into an affidavit by a government official who is not the affiant can be the basis for a *Franks* suppression. *See, e.g.*, *Kennedy*, 131 F.3d at 1376 (citations omitted). An affiant or government official's negligent or innocent mistake resulting in a false statement in an affidavit is not enough to satisfy a defendant's burden. *See, e.g.*, *United States v. Orr*, 864 F.2d 1505, 1508 (10th Cir. 1988).

In *Franks*, the Supreme Court explicitly held that allegations "should be accompanied by a statement of supporting reasons [and] . . [a]ffidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained." 438 U.S. at 171. "To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine." *Id.*; s*ee, e.g.*, *United States v. Ross*, 920 F.2d 1530, 1534 (10th Cir. 1990) (defendant did not satisfy his substantial preliminary showing where, among other things, defendant submitted no affidavits and no witnesses); *compare United States v. Crook*, 936 F.2d 1012, 1014 (8th Cir. 1991) (defendant did not satisfy his burden where he "made no offer of proof as to [the affiant's] alleged intentional falsity or reckless disregard for the truth"), *cert. denied*, 502 U.S. 1075 (1992).

In connection with his original motion to suppress, Defendant did not attach any affidavits or other sworn statements. Defendant also did not provide an explanation, satisfactory or otherwise, why such affidavits or statements were not included. Instead, Defendant filed a two-and-one-half page motion in which Defendant's counsel challenged the affidavit. In its Motion to Strike, the government argued that Defendant did not make an offer of proof in support of his allegations as he is required to do under *Franks*. The Court agreed and allowed Defendant an opportunity to remedy this insufficiency by filing a pleading consistent with *Franks*, *i.e.*, accompanied by an offer of proof, including affidavits or sworn or otherwise reliable statements of witnesses. In accordance with the Order, Defendant filed an additional pleading accompanied by an affidavit sworn to by Patricia Moore. The Court finds that the Defendant has provided a sufficient offer of proof.

Once the Court determines that Defendant has accompanied his allegations of false statements and material omissions with a sufficient offer of proof, the Court must determine whether the allegations meet the *Franks* "substantial preliminary burden" test. Here, the issue is whether Defendant has made a substantial preliminary showing that a law enforcement officer made a knowing, intentional, or reckless false statement or material omission. The government maintains that Defendant has not made a substantial showing that TFO Rodriguez, Fuentes, or another government official knowingly, intentionally, or recklessly made a false statement or a material omission. In contrast, Defendant argues that the affidavit contains the following false statements and material omissions: (i) the warrant inaccurately indicates that the routine checks of Defendant's residence began on November 14, 2003, when in fact the checks began well before that time, and does not indicate that Defendant had a relationship with a personal friend of TFO Rodriguez or that the investigation was motivated by this fact, (ii) the warrant contains misrepresentations from TFO

Rodriguez because Defendant alleges that TFO Rodriguez who "knew that any materials found in the dumpster had not been placed there by [Defendant]," and (iii) the affidavit incorrectly indicates that TFO Rodriguez informed Defendant of his constitutional right to remain silent, and that Defendant admitted to cooking methamphetamine when in fact Defendant refused to answer any questions posed by TFO Rodriguez.

With respect to Defendant's allegations that the affidavit did not indicate that TFO Rodriguez had a personal relationship with a person with whom Defendant was in a relationship, in his original motion, Defendant indicated through his attorney that TFO Rodriguez had a "personal vendetta" against Defendant, that the vendetta motivated the other misrepresentations in the affidavit and that the affidavit should have included the information about the relationship. In his supplemental motion, Defendant indicated that TFO Rodriguez was having a sexual relationship with Patricia Moore, who is currently dating Defendant. Attached to Defendant's supplemental motion is an affidavit sworn to by Ms. Moore, in which she states that TFO Rodriguez coerced her into having a sexual relationship with him from September 2001 until August 2003, when she finally had the courage to terminate their relationship. Ms. Moore further states her belief that TFO Rodriguez targeted Defendant in an attempt to get him out of the way so that TFO Rodriguez could have better access to her in order to resume their relationship. In his supplemental motion, Defendant argues that, although TFO Fuentes rather than TFO Rodriguez was the affiant in this case, TFO Fuentes acted with TFO Rodriguez's complicity in keeping from Magistrate Judge Torgerson the relevant facts concerning TFO Rodriguez's personal stake in having Defendant prosecuted.

The government argues that Defendant has provided no proof that the affiant, TFO Fuentes, had any knowledge of the relationship between TFO Rodriguez and Ms. Moore or acted in complicity

with TFO Rodriguez to keep this information from Magistrate Judge Torgerson. The government has submitted an affidavit sworn to by TFO Fuentes in which TFO Fuentes states that he was not aware of any matter alleged in Ms. Moore's affidavit pertaining to her relationship with TFO ROdriguez at the time that he served as affiant on the search warrant. Accordingly, the government contends, Defendant has failed to show that the affiant made a knowingly and intentionally false statement, or recklessly disregarded the truth in his affidavit for the search warrant.

While the Court agrees that Defendant has not made a substantial preliminary showing that TFO Fuentes knowingly, intentionally, or recklessly omitted the information about TFO Rodriguez's relationship with Ms. Moore, this is not the end of the inquiry. As set forth above, a false statement or material omission need not be made by the affiant himself or herself. Rather, a deliberate or reckless false statement or omission incorporated into an affidavit by a government official who is not the affiant can be the basis for a *Franks* suppression. Accordingly, any omissions by TFO Rodriguez also can provide a basis for Defendant's *Franks* challenge. Thus, while the omission from TFO Fuentes's affidavit of information about TFO Rodriguez's relationship with Ms. Moore may have been merely negligent or innocent, the Court must impute to TFO Fuentes TFO Rodriguez's knowledge of the relationship. The evidence presented by Defendant is sufficient to establish a substantial preliminary showing that any omission by TFO Rodriguez of this information was made knowingly, intentionally, or recklessly. Thus, Defendant has satisfied the first part of the *Franks* test.

The remainder of Defendant's allegations, however, do not meet the first part of the *Franks* test. Defendant's claim that "TFO Rodriguez misrepresented what was found in the dumpster because he knew that any materials found in the dumpster had not been placed there by [Defendant]" does not constitute a substantial preliminary showing that TFO Rodriguez committed an intentional,

-11-

knowing, or reckless false statement or material omission. Indeed, the affidavit does not state that TFO Rodriguez saw Defendant placing the trash in the dumpsters. Rather, the affidavit states that "Officer *Delfin* observed the trailer backed up to dumpsters[,] . . . observed an individual throwing trash from the trailer into the dumpsters," and "identified the driver as [Defendant]" after pulling over the driver of the dumpster. (Emphasis added.) As the government argues, Defendant's showing in this regard is insufficient because Defendant did not produce any evidence that the trash was placed in the dumpster by anyone but himself.[1] Furthermore, various items in the trash bags containing the ingredients for methamphetamine link Defendant to the trash. This evidence weighs against a substantial preliminary showing on Defendant's behalf. Defendant indicates in his motion that he "requests an evidentiary hearing to establish the facts as set forth in [his] motion." To be entitled to such a hearing under *Franks*, however, Defendant first must make a substantial preliminary showing of a knowing, intentional, or reckless false statement or material omission. Defendant's statement does not satisfy this standard.

Defendant's claim that the affiant incorrectly stated that TFO Rodriguez informed Defendant of his constitutional right to remain silent and that Defendant admitted to "cooking" methamphetamine, in contrast, could be considered substantial. If Defendant were correct that TFO Rodriguez did not notify him of those rights and Defendant did not waive those rights, this misstatement at the very least would be reckless on the part of TFO Rodriguez. The government, however, has submitted a copy of a portion of the transcript of the taped interview during which Defendant was informed of his rights under *Miranda*. The portion of the transcript shows that after

---

[1] In addition, the government points out that one other agent, presumably TFO French, watched TFO Rodriguez open the garbage bags, and that one civilian witness also was present when at least some of the trash bags were opened.

he was advised of his rights, Defendant admitted that he had cooked methamphetamine at his house a few times in the past. This evidence negates Defendant's claim.

  **B.** **Second Part of *Franks* Test:  Would Probable Cause be Vitiated if the the Omitted Material Were Included?**

Once the Court concludes that Defendant has satisfied the first part of his burden under *Franks*, the Court next must determine whether the allegedly material omissions are necessary to the finding of probable cause. *See Franks*, 438 U.S. at 155-56. Where information has been omitted from an affidavit, the Court must "examin[e] the affidavit as if the omitted information had been included and inquir[e] [whether] the affidavit would still have given rise to probable cause for the warrant." *Stewart*, 915 F.2d at 582 n.13. If Defendant cannot demonstrate that the search warrant would not be issued but for the omitted information, Defendant is not entitled to an evidentiary hearing.

The standard to determine whether probable cause exists is "whether the facts presented in the affidavit would 'warrant a [person] of reasonable caution' to believe that evidence of a crime will be found at the place to be searched." *United States v. Nolan*, 199 F.3d 1180, 1183 (10th Cir. 1999) (citation omitted). A magistrate's task is to "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 1182 (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "Only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause." *Nolan*, 199 F.3d at 1182-83.

If the facts regarding TFO Rodriguez's relationship with Ms. Moore are included, the Court is faced with the following facts from which it must determine whether probable cause existed: (i)

prompted by TFO Rodriguez, police began to conduct routine checks of Defendant's residence before November 14, 2003, (ii) TFO Rodriguez had a sexual relationship with Defendant's girlfriend, (iii) on November 14, 2003, Officer Delfin stopped Phil Duran, recovered a plastic bag of red phosphorous, learned that Mr. Delfin planned to sell the bag to Defendant, and that Mr. Delfin had "cooked" methamphetamine at Defendant's residence on a couple of occasions, (iv) Defendant disposed of trash not through routine trash pickups but rather through the use of a private trailer located in front of his house, (v) Officer Delfin observed the trailer and an individual that Officer Delfin later identified as Defendant throwing trash from the trailer into dumpsters located at an elementary school across the street from Defendant's residence, (vi) the principal of the school indicated that the trash in the dumpster did not belong to the school and gave officers permission to search the trash, (vii) numerous items in three garbage bags and a tan suitcase used to manufacture methamphetamines were recovered, (viii) also recovered were items such as magazines and pay stubs linking Defendant to the trash, (ix) TFO Rodriguez advised Defendant of his rights under *Miranda* and Defendant answered questions posed by TFO Rodriguez, indicating that he had placed trash in the school dumpster and had cooked methamphetamine at his house a few times.

The Court finds that, even taking into consideration the facts regarding TFO Rodriguez's relationship with Ms. Moore, a person of reasonable caution would believe that evidence of a crime could be found at Defendant's residence. *See Nolan*, *Id.* at 1183. Accordingly, the allegedly material omissions identified by Defendant are not necessary to the finding of probable cause. Defendant thus has failed to demonstrate that the search warrant would not have been issued but for the omitted information. For this reason, Defendant is not entitled to an evidentiary hearing.

**CONCLUSION**

Defendant has satisfied the first part of the *Franks* test by making a substantial preliminary showing that TFO Rodriguez's omission of information regarding his relationship with Ms. Moore was knowing, intentional, or reckless. Defendant, however, has not satisfied the second part of the *Franks* test, as the omission identified by Defendant is not necessary to the finding of probable cause. Because Defendant has failed to demonstrate that the search warrant would not have been issued but for the omitted information, Defendant is not entitled to an evidentiary hearing.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Suppress **[Doc. No. 32]** is hereby **DENIED**.

Dated this 7th day of March, 2005.

_____
MARTHA VAZQUEZ
CHIEF UNITED STATES DISTRICT JUDGE

Attorney for Plaintiff:
Nelson Spear

Attorney for Defendant:
Robert Gorence